A89A1198. ZUBIADUL v. THE STATE.
(387 SE2d 431)

BEASLEY, Judge.

Defendant appeals his conviction for trafficking in cocaine. OCGA § 16-13-31. His sole enumeration of error asserts that the trial court erred in admitting testimony concerning a statement he made to a DEA agent and an assistant district attorney.

Defendant was arrested in the Atlanta Airport for giving a false name to a law enforcement officer. A suitcase, which defendant denied was his, but the only one on the flight having the same itinerary as his, Miami to Minneapolis via Atlanta, was found to contain 585 grams of 42 percent cocaine. When the officer first saw defendant's plane ticket, it had a baggage claim check attached. When he later asked defendant for the ticket, the claim check was gone.

Defendant appeared in court for his bail bond hearing. At the conclusion of the hearing after his retained attorney left the courtroom, defendant asked to speak to the assistant district attorney, Sticher, and requested an opportunity to explain the circumstances concerning the suitcase.

Sticher searched for defendant's attorney and although he was

unable to find him, defendant continued to entreat for a chance to offer an explanation. As a result, Sticher sought a DEA agent to accompany him in discussions with defendant. The agent, who was not the one assigned to defendant's case, attempted to read defendant his *Miranda* rights. Defendant continuously interrupted and repeatedly stated: "I don't understand, I just want to tell you about the suitcase." Because of the interruptions the agent was unable to complete the *Miranda* warnings, so Sticher tried to explain defendant's rights using "layman's language." Defendant interjected repetitiously: "I don't understand. I just want to tell you the truth. I want to tell you about the suitcase. I want to tell you what happened." Sticher reiterated that "you do not have to talk to us."

Defendant continued to insist that although he did not understand what was being told him he wanted to tell the truth about the suitcase. Finally he related to the agent and Sticher that he was stranded in Miami without funds and sought the aid of his roommate in Minneapolis, who put him in contact with the roommate's brother who lived in Miami. The brother purchased defendant a ticket home in exchange for his delivering a suitcase to his roommate in Minneapolis. These conversations with the assistant district attorney and the DEA agent occurred in the courtroom, while defendant was sitting in the jury box.

Once an accused has invoked the right to counsel, he may not be subjected to further interrogation unless counsel is present. *Roper v. State*, 258 Ga. 847 (375 SE2d 600) (1989), U. S. cert. pending. [The protection furnished as to post arraignment interrogation is if anything even stronger than early custodial interrogation. *Michigan v. Jackson*, 475 U. S. 625, 631 (106 SC 1404, 89 LE2d 631) (1986).] Thereafter, his responses to further questioning may be admitted only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Hall v. State*, 255 Ga. 267, 270 (1) (336 SE2d 812) (1985); *Edwards v. Arizona*, 451 U. S. 477, 484-5 (101 SC 1880, 68 LE2d 378) (1981); *Smith v. Illinois*, 469 U. S. 91 (105 SC 490, 83 LE2d 488) (1984).

Crucial is whether a statement results from a custodial interrogation. If an accused volunteers a noncoerced statement then it is not necessary to invoke the tests which only apply to information obtained as a result of interrogation. This was recognized in *Miranda v. Arizona*, 384 U. S. 436, 478 (86 SC 1602, 16 LE2d 694) (1966), where it was held: "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privi-

lege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Id. at 478.

All statements obtained by the police after a person has been taken into custody are not to be considered the product of interrogation. *Rhode Island v. Innis*, 446 U. S. 291, 300 (100 SC 1682, 64 LE2d 297) (1980), explains: "It is clear . . . that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." The court concluded that *"Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . . [These] safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police." The court added that "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."

*Edwards v. Arizona*, supra at 485, observed that had defendant there initiated the meeting with police officers "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that [defendant] invoked and there would [have been] no occasion to determine whether there had been a valid waiver." Compare *Arizona v. Mauro*, 481 U. S. 520, 527 (107 SC 1931, 95 LE2d 458) (1987).

Defendant had retained an attorney but he initiated the discussions with the law enforcement personnel. They only furnished him a willing audience for his story and engaged in no attempt to interrogate him or elicit information from him. Defendant ignored their efforts to inform him of his rights and insisted upon relating his explanation to them. Although this is not a typical waiver of rights but instead a deliberate shunning of them or choosing to remain ignorant

of them, it does come within the volunteered statement principle. There is no burden on State officials to prevent defendant from talking about the incident if he wishes to do so. Simply stated they must not interrogate but they need not refuse to listen.

The admission of defendant's statement was not error.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 18, 1989.

*The Garland Firm, Donald F. Samuel,* for appellant.

*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney,* for appellee.